IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SUSAN CLESTER,

                Plaintiff,                            CV-09-765-ST

       v.                                   FINDINGS AND
                                                       RECOMMENDATION

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Susan Clester ("Clester"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") partially denying her applications for Supplemental Security Income ("SSI") under Title XVI and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-33. This court has

1 - FINDINGS AND RECOMMENDATION

jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3).

For the reasons set forth below, the Commissioner's decision should be reversed and remanded for the calculation and payment of benefits.

## ADMINISTRATIVE HISTORY

Clester protectively filed for DIB and SSI on August 15, 2000, alleging a disability onset date of August 25, 1995. Tr. 114-16,[1] 705.[2] Those applications were denied both initially and on reconsideration. Tr. 69-70. Clester requested a hearing before an Administrative Law Judge ("ALJ"). On July 14, 2004, ALJ James Caulfield presided over a hearing at which Clester appeared and testified. Tr. 651-701. He issued a partially favorable decision on February 7, 2005, finding Clester disabled as of April 27, 2004, six months before her 55th birthday, but not before that date. Tr. 75-82.

On November 29, 2006, the Appeals Council remanded the case to a new ALJ to reconsider the time period before April 27, 2004. Tr. 83-86. ALJ William Stewart conducted a supplemental hearing on March 5, 2007, receiving testimony from a vocational expert ("VE"). Tr. 702-16. As did ALJ Caulfield, ALJ Stewart found Clester disabled as of April 27, 2004, but not prior to that date, making Clester eligible for SSI but not for DIB.[3] Tr. 22-30. The Appeals Council declined to grant Clester's request for review, making ALJ Stewart's decision the Commissioner's final decision. Tr. 9-11.

---

[1] Citations are to the page(s) indicated in the official transcript of record filed on November 13, 2009 (docket #9).

[2] Clester apparently filed the applications simultaneously, although no copy of the SSI application is in the record.

[3] Clester was last insured for DIB purposes through December 31, 1999. Tr. 29, 122. SSI benefits are not dependent upon insured status.

2 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Clester was born in 1949. She completed high school and two years of college and has past work experience as a teacher's assistant, clerical worker, executive secretary, and savings and loan officer. Tr. 28, 167. She alleges that she became unable to work on August 25, 1995, due to anxiety, depression, and suicidal thoughts. Tr. 131, 175.

## DISABILITY ANALYSIS

Based on application of the Medical-Vocational Guidelines, the Commissioner determined that Clester is disabled on and after April 27, 2004. This appeal concerns the period of time prior to April 27, 2004, when the Commissioner concluded that Clester's substance abuse disorder was a contributing factor material to the finding of disability. Tr. 29.

In construing an initial disability determination, the Commissioner engages in a sequential process encompassing between one and five steps. 20 CFR §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). Absent a severe impairment, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii);

20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments.  20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work.  20 CFR § 416.920(a)(4)(iv).  If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy.  *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC.  *Id.*  If the Commissioner meets this burden, then the claimant is not disabled.  20 CFR §§ 404.1566, 416.966.

> Under 42 USC § 423(d)(2)(C), a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." . . . Under the implementing regulations, the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol.  20 CFR § 404.1535(b).  If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability.  If the

>       remaining limitations would not be disabling, then the claimant's
>       substance abuse is material and benefits must be denied.

*Parra v. Astrue*, 481 F3d 742, 746-47 (9th Cir 2007), *cert. denied*, 552 US 1141 (2008).

The drug and alcohol analysis is only performed "[i]f we find that you are disabled." 20 CFR § 404.1535(a); *Bustamante v. Massanari*, 262 F3d 949, 955 (9th Cir 2001) (ALJ must identify disability under the five-step procedure before conducting a drug and alcohol abuse analysis to determine if substance abuse was material to disability). The claimant has the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability. *Parra*, 481 F3d at 748.

## ALJ'S FINDINGS

At step one, the ALJ concluded that Clester has not engaged in any substantial gainful activity since the alleged onset date of her disability. Tr. 29.

At step two, the ALJ determined that Clester suffers from the severe impairments of refractory alcohol dependency, depression, personality disorder with borderline features, asthma, a history of radius fracture, status-post reduction and internal fixation, and carpal tunnel syndrome, status-post release. *Id*.

At step three, the ALJ concluded that, without consideration of her substance abuse disorder, Clester does not have an impairment or combination of impairments that meets or equals any of the listed impairments. *Id*. The ALJ decided that, absent consideration of substance abuse, Clester has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, and can sit and stand/walk 6 hours each in an 8 hour work day. The ALJ found Clester restricted from climbing ladders or using scaffolds, must avoid exposure to fumes and dust, is unable to follow detailed instructions or work with others in ongoing teamwork

endeavors or work with the public, is moderately restricted in tolerating unanticipated, rapid changes in the work setting, and has difficulty maintaining close attention and concentration for extended periods, but can perform a simple task for at least 2 hours at a time. Tr. 29-30.

At step four, the ALJ found that Clester is unable to perform any of her past relevant work. Tr. 30. The ALJ found Clester disabled on and after April 27, 2004 under the Medical-Vocational Guidelines, 20 CFR § 416.969 and Rule 202.06 of Appendix 2, but not disabled under Rules 202.21 and 202.14 prior to that date. *Id*.

The ALJ concluded that prior to April 27, 2004, Clester was unable to perform the full range of light work, but could perform other work that exists in significant numbers in the national economy as a hand stuffer, ticketer, and garment sorter. *Id*. Accordingly, the ALJ concluded that Clester was not disabled prior to April 27, 2004, but was disabled after that date through the date of the decision on May 23, 2007. *Id*.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the

6 - FINDINGS AND RECOMMENDATION

evidence are insignificant if the Commissioner's interpretation is a rational reading. *Lingenfelter*, 504 F3d at 1035; *Batson*, 359 F3d at 1193.

## FINDINGS

Clester asserts that the ALJ improperly rejected the opinions of her treating and examining physicians. As a result, she contends that the ALJ improperly concluded that her substance abuse disorder was a contributing factor material to the finding of disability prior to April 27, 2004. She also asserts that the ALJ erred in assessing the severity of her restrictions and her RFC and failed to include all of her restrictions in the step five analysis.

### I. Rejection of Treating Doctor's Opinion

#### A. Issues

The primary issues raised in this appeal are whether the ALJ erred by rejecting the opinion of Clester's long-time treating psychiatrist, Jackson T. Dempsey, M.D., and the opinion of an examining psychologist, Grant Rawlins, Ph.D. Drs. Dempsey and Rawlins completed reports opining as to Clester's level of impairment absent the presence of alcohol use. The ALJ rejected that information and concluded that "when the claimant abstains from alcohol abuse, or controls it to a degree, . . . [her] condition does not meet . . . any listing." Tr. 27. As a result, the ALJ concluded that Clester's substance abuse is a contributing factor material to a finding at step three, and a finding of disability cannot be reached by reference to the Appendix 1 listings. *Id*.

For reasons explained below, the ALJ improperly rejected that opinion and the record reveals that, if properly credited, Dr. Dempsey's opinion establishes Clester's entitlement to benefits for the period under review. Accordingly, this court need not and does not discuss any other issue raised in this appeal.

### B. Legal Standard

The weight given to the opinion of a physician depends on whether it is from a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician who has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F3d 625, 632 (9th Cir 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id*; *Widmark v. Barnhart*, 454 F3d 1063, 1067 (9th Cir 2006). Even if the opinion is contradicted by another physician, the ALJ may not reject it without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F3d at 632; *Widmark*, 454 F3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F3d at 1066 n2. An opinions by a nonexamining, testifying medical advisor may serve as substantial evidence when it is supported by and is consistent with other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 600 (9th Cir 1999).

### C. Dr. Dempsey's Assessment

Dr. Dempsey performed an initial psychiatric evaluation of Clester on December 10, 1992, about a month and a half after she began treatment at the Josephine County Mental Health Department. Tr. 418-20. At that time, she reported undergoing counseling and seeing a psychiatrist once previously "for stress related problems, did not reveal that she was actively drinking, was prescribed medication, which she did not take." Tr. 419. Dr. Dempsey provisionally diagnosed dysthymia (rule out major depression) and alcohol abuse in remission. Tr. 420.

Dr. Dempsey next saw Clester over three years later following an August 19, 1996 suicide attempt.[4] Tr. 417. The next three and a half years through Clester's date last insured of December 31, 1999, were characterized by ongoing depression and anxiety, recurring cycles of alcohol abuse and intoxication, suicidal ideation and suicide attempts, and related hospitalizations, detox, and alcohol treatment. Tr. 261-62, 267-75, 287-89, 296-98, 303-04, 380-98, 400-13, 440-41. This pattern continued unremitting after Clester's date last insured on December 31, 1999. An April 14, 1998 chart note from Dr. Dempsey describes the pattern as follows:

> Clester reports that things aren't going so well. She started drinking again. She identifies a pattern of doing okay for a period of several months, perhaps four, and then beginning to experience more depression, suicidal thoughts, agitation, anxiety, restless sleep with bad dreams, and physical aches and pains. This goes on for a period of perhaps 3-4 weeks, and then subsides. She just recently gone [sic] through such an episode. During this she is much more likely to drink, and she started drinking again this time, and has been drinking heavily.

Tr. 398.

In a March 2, 2004, letter requesting coverage for Clester's prescription for Neurontin, Dr. Dempsey noted that Clester "has one of the most severe illnesses that I have worked with over the 20 years that I have been involved in psychiatry" and that Clester is "at high risk for recurrence, relapse and an additional suicide attempt." Tr. 564. Three months later, he completed a Mental Residual Function Capacity ("MRFC") Report. Tr. 565-66. The MRFC Report specified that it should be completed without consideration of any limitations resulting from alcoholism or drug addiction:

---

[4] The administrative transcript contains no medical records dated between the December 1992 and August 1996 evaluations by Dr. Dempsey.

9 - FINDINGS AND RECOMMENDATION

> **In responding to the ratings on this form, please <u>do not include</u> any limitations which you believe the individual has a a result of his or her alcoholism or drug addiction, if any. In other words, do not include limitations which would go away if the individual stopped using drugs or alcohol.**

Tr. 565 (bold and underlining in original).

Dr. Dempsey found that, without the use of drugs or alcohol, Clester is markedly limited in her activities of daily living, social functioning, concentration, persistence and pace, and has suffered four or more episodes of decompensation. Tr. 569.

### D.  Analysis

In rejecting Dr. Dempsey's assessment of the level of Clester's impairments, the ALJ repeatedly noted that Clester's suicide attempts and hospitalizations were accompanied by alcohol use, noting that Clester's "most serious events occurred in the context of heavy alcohol abuse . . . and she was improved when not intoxicated." Tr. 25. As succinctly summarized by the ALJ, Clester "has a severe problem with alcohol abuse, actively drinking and frequently acutely intoxicated. She has had ongoing suicidal ideation and suicidal attempts and gestures during her intoxicated states. It would be fair to say that she is very dysfunctional when drinking, with inpatient admissions at times." Tr. 26. The ALJ contended that "Dr. Dempsey's report shows that the claimant does much better when she abstains from alcohol abuse." Tr. 25. He also found that Clester had no "suicidal gestures and no significant overt psychiatric symptoms or limitations" while imprisoned between February 25 and December 22, 2003, leading him to conclude "[t]hat shows that she is improved substantially when she abstains from alcohol." *Id.*

These observations reveal two areas of agreement between the ALJ and Dr. Dempsey. Both recognize that for many years Clester has struggled with cycles of depression and episodic alcohol use. And both believe that Clester functions better when not drinking alcohol, as evidenced by Dr. Dempsey's prolonged effort to get her into treatment programs and to encourage her abstention from alcohol. However, at issue here is not whether Clester has abused alcohol or whether she is "very dysfunctional when drinking." Instead, the issue is whether Clester's debilitating limitations would remain if she abstained from using alcohol. Dr. Dempsey opined that Clester would have marked limitations in all functional areas even without alcohol abuse, which the ALJ flatly rejected.

Dr. Dempsey treated Clester for a decade, including during the critical time period at issue in this case. At his first appointment on December 10, 1992, Dr. Dempsey noted Clester's description of self-medicating with alcohol in order to get her through her bouts of depression:

> She reports that her depression is usually intermittent and last from a week to 10 days to two weeks. . . . She developed a drinking problem about 10 years ago, and believes this was in response to the depression and it was effective at controlling it for a period of time. Whenever she became depressed she would drink and that would help her with it. Over the last year or two the drinking has no longer helped. The depression has worsened, it's practically continuous now. It is associated with suicidal thoughts, and on one occasion a plan.

Tr. 418; *see also* Tr. 412 (August 26, 1996 chart note that "Clester started drinking 8 years ago to excess. She reports that she felt hopeless and her drinking was a means to self medicate her depression and anxiety").

In his June 8, 2004 Rating of Impairment Severity Report, Dr. Dempsey placed the blame for Clester's difficulties squarely on her psychological impairments, not on her use of alcohol:

11 - FINDINGS AND RECOMMENDATION

"I have known [Clester] for over 10 years. For most of that time she has been markedly impaired in her ability to function as a result of ongoing depression, anxiety, [and] irritability." Tr. 569. Dr. Dempsey was clearly aware of Clester's episodic cycles of alcohol abuse, as reflected in his notations that she smelled of alcohol during exams and his efforts to get her enrolled in alcohol treatment programs. With that decade-long knowledge, Dr. Dempsey found her psychological impairments significant enough to result in marked limitations even without consideration of the alcohol abuse.

The ALJ cited several reasons for rejecting Dr. Dempsey's opinion, none of which withstands scrutiny. Tr. 26. First, he found that Dr. Dempsey's report was not based on a clinical examination. Given Dr. Dempsey's 10 year history of treating Clester, including multiple examinations during the period now at issue, his failure to perform another examination in June 2004 is not a clear and convincing reason to discredit his opinion.

Next the ALJ contends that Dr. Dempsey's report is "inconsistent with [Clester's] observed functioning in prison." Tr. 26. It is unclear on what "observed functioning" ALJ Stewart relied in making this statement. The prior February 7, 2005 decision by ALJ Caulfield states that Clester "took educational courses, ha[s] a regular prison work detail, and read a lot." Tr. 78. ALJ Caulfield placed great weight on Clester's lack of "any significant difficulty regulating her conduct or adjusting to the strict rules imposed by prison officials" in making his decision, opining that the "stressors [in prison] are arguably greater than those likely to face a person on the outside." Tr. 79. However, the evidentiary basis for those conclusions is at best paltry, and an equally persuasive argument can be made that the stresses of working are significantly higher than those imposed in the structure of incarceration.

There are some minimal medical records from Clester's prison stay, but little else in the way of observations of her functioning while incarcerated. Tr. 570-91. Assuming for the sake of argument that the minimal documentation of psychologically based symptoms means Clester was functioning better while incarcerated, the ALJ's observation nevertheless does not provide a clear and convincing reason to discredit Dr. Dempsey's opinion regarding her level of functioning without the use of alcohol in a non-incarcerated setting.

While ALJ Caulfield thought incarceration would be more stressful, imprisonment also imposes a highly structured setting with little interaction with a limited set of individuals, a highly controlled schedule, and incentives for "good" behavior. It imposes little or nothing comparable to the performance demands that are imposed in daily life, much less in a competitive work setting. Clester took "interesting classes . . . dealing with mental health" while incarcerated, which were group classes on "getting along with others [and] accepting and understanding why were there." Tr. 666, 668. She also worked for about a week in the prison kitchen, then after a month off due to a population transfer, spent about four to six hours a week working in the prison library, but "wasn't pressed on a certain schedule." Tr. 667-68. As evidenced by her repeated requests to her parole officer to send her back to prison (Tr. 682), Clester apparently found the structures imposed by incarceration less stressful than the stresses of life outside the prison walls. It is an unwarranted leap of logic to assume that Clester's improved functioning in prison (if it in fact existed) was attributable simply to her sobriety. At a minimum, it provides no persuasive basis to discredit Dr. Dempsey's opinion about Clester's level of functioning without considering her use of alcohol.

Next, the ALJ asserts that Dr. Dempsey's "opinion was based on [Clester's] presentation

13 - FINDINGS AND RECOMMENDATION

when she was abusing alcohol on a daily basis." Tr. 26. While some of Dr. Dempsey's chart notes records reflect Clester smelling of alcohol, others reflect sobriety. Rather than providing a basis for discrediting Dr. Dempsey's opinion, these records provide more support. Dr. Dempsey has a longstanding treatment history with Clester and has seen her both sober and under the influence of alcohol. The ALJ's reasoning might hold more sway if Dr. Dempsey were unaware of Clester's cycles of depression and episodic alcohol use, fluctuating GAF scores, incarceration (and accompanying sobriety), and the like. However, the record reflects that Dr. Dempsey was well aware of these issues and doing his best to help Clester work through them by means of medication adjustments, counseling, and treatment programs.

Finally, the ALJ appears to give more credit to the discharge notes of a hospital physician following a six week hospital stay in October and November 2000 after Clester's suicide attempt (by ingesting nearly 25,000 mg. of asprin and an unknown amount of rat poison) than to Dr. Dempsey's opinion. The ALJ notes "that report shows that [Clester's] symptoms are significantly restrictive, but alcoholism is a major contributing factor." Tr. 25, citing Exhibit 2-F (Tr. 312). An ALJ "may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician." *Thomas v. Barnhart*, 278 F3d 947, 957 (2002). However, the ALJ must make "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id* (citation and internal quotation marks omitted). Here, the ALJ made no such findings. He simply cited the discharge notes as authority for his conclusion that

alcohol is a contributing factor material to Clester's disability. These are insufficient findings to meet the ALJ's burden.

In sum, the ALJ failed to provide any sufficient basis on which to reject the opinion of Clester's longtime treating psychiatrist regarding the level of Clester's limitations absent the use of alcohol.

## II. Remand

After finding that the ALJ erred, this court has discretion whether to remand for an immediate award of benefits or for further proceedings. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings because the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision, and it is clear from the record the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F3d 1195, 1210 (9th Cir 2001).

In this case, the record is clear that if Dr. Dempsey's opinion were properly credited, Clester would be found disabled. Dr. Dempsey found that, even without considering the limitations resulting from her alcoholism, Clester had marked limitations in her "ability to . . . maintain regular attendance, and be punctual within customary tolerances." Tr. 566. The VE testified that individuals who miss two or more days on a chronic basis are not competitively employable. Tr. 714. Thus, even without considering the issues identified by Clester's attorney regarding the jobs identified by the VE, such as the reasoning level and the effect of any residual manipulative limitations, Dr. Dempsey's opinion, when fully credited, establishes that Clester is

not competitively employable, even without considering the effects of her alcoholism. Accordingly, no additional investigation or explanation of the record is needed.

## RECOMMENDATION

For the reasons stated above, the Commissioner's decision should be REVERSED AND REMANDED pursuant to Sentence Four of 42 USC § 405(g) for the immediate calculation and award of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 20, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day of August, 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge