IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


SUSAN CLESTER,

                Plaintiff,

      v.                                        Civil No. 09-765-ST

                                                FINDINGS AND RECOMMENDATION

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Susan Clester, filed this action against defendant, Commissioner of the Social

Security Administration, seeking review of the Commissioner's decision denying her request for

1 - FINDINGS AND RECOMMENDATION

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") based on her mental impairments. Clester asserted that the Administrative Law Judge ("ALJ") erred by: (1) rejecting the opinions of her examining psychologist and treating psychiatrist and finding that her alcohol abuse was material to the finding of disability; (2) failing to consider her hand limitations; and (3) improperly relying on the vocational expert testimony. This court found that the ALJ erred by rejecting the opinion of her treating psychiatrist and remand the case for an award of benefits. Findings and Recommendation (docket #19), adopted by Order (docket #21). On August 31, 2010, this court entered a Judgment reversing and remanding the decision of the Commissioner for payment of benefits (docket #22).

On November 6, 2010, Clester's attorneys filed an Unopposed Application for Fees Pursuant to the Equal Access to Justice Act ("EAJA") in the sum of $5,580.00 (docket #23), to which the Commissioner stipulated (docket #24) and which the court granted (docket #26).

Thereafter on November 27, 2010, Clester's attorneys filed a Motion for Attorneys Fees Pursuant to 42 USC § 406(b) (docket #27), seeking fees in the sum of $18,682.25 (including previously awarded EAJA fees). This motion is not opposed (docket #31).[1] For the reasons set forth below, that motion should be granted.

## LEGAL STANDARD

In Social Security cases, attorney fees may be awarded under both the EAJA and 42 USC § 406(b). Congress enacted the EAJA in 1980 to permit recovery of attorney fees in those cases where "the Government's position in the litigation was not 'substantially justified.'" *Gisbrecht*,

---

[1] The Commissioner has no reason to oppose an attorney fee request under § 406(b) since any fee awarded will be paid by the claimant from the benefits awarded to him or her.

*v. Barnhart*, 535 US 789, 796 (2002), citing 28 USC § 2412(d)(1)(A). EAJA fees are determined by the time spent multiplied by a capped hourly rate. *Id*, citing 28 USC § 2412(d)(2)(A). In contrast, pursuant to 42 USC § 406(b)(1)(A), "the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." Such fee awards are paid from a claimant's retroactive benefits award. *Id*. In attorney fee motions under 42 USC § 406(b), the real party in interest is the attorney, not the claimant. *Id* at 798 n6. An attorney receiving a § 406(b) fee award may not seek any other compensation from a claimant. *Id* at 796. Accordingly, when a court approves both an EAJA fee and a § 406(b) fee, the claimant's attorney must refund to the claimant the smaller amount of the two awards. *Id*.

The § 406(b) fee is not determined by the lodestar method which governs fee-shifting disputes. *Id* at 801-01. Instead, contingency fee agreements not exceeding 25% of the claimant's retroactive benefits are enforceable under § 406(b) subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id* at 807. The claimant's attorney bears the burden to establish the reasonableness of the fee. *Id*.

The Ninth Circuit has articulated four factors derived from *Gisbrecht* that district courts should use in determining whether a reduction from the contingent fee agreement is appropriate:

    1. the character of the representation, specifically, whether the representation was "substandard;"

    2. the results the representative achieved;

    3. any delay attributable to the attorney seeking the fee; and

4. whether the benefits obtained were "not in proportion to the time spent on the case"

and raise the specter that the attorney would receive an unwarranted windfall.

*Crawford v. Astrue*, 586 F3d 1142, 1151-53 (9th Cir 2009).

In other words, the court is empowered to exercise discretion to ensure that the claimant is protected from having to surrender retroactive disability benefits in a disproportionate payment to counsel. *Id* at 1151, citing *Gisbrecht*, 535 US at 808.

## FINDINGS

I.     **Contingency Fee Agreement**

The first step in the *Gisbrecht* analysis is to examine the contingent fee agreement to determine if it is within the statutory 25% ceiling of § 406(b). On June 18, 2009, Clester executed a fee agreement which provides for payment of a fee to her attorney equal to 25% of any past-due benefits resulting from her claim, and no fee if no benefits are awarded. This falls within the statutory limits, and the record reveals "no evidence of fraud or overreaching in the making of the 25% contingent-fee agreement." *Crawford*, 586 F3d at 1151.

The next step is to confirm that the requested fee does not exceed the 25% ceiling of § 406(b). Clester's attorneys have submitted a benefit award dated September 21, 2010 (for disability benefits beginning August 1999). This award reveals that the Commissioner has withheld $30,280.25, representing 25% of the past-due benefits, for payment of attorney fees awarded by the court. Although Clester's attorneys state that their request of $18,682.25 is 25% of the past-due benefits, they provide no calculation or explain why their figure differs from the Commissioner's calculation. Based on the Commissioner's calculation, the past-due benefits

total $121,121.00, of which the request of $18,682.25 by Clester's attorneys would be about 15%. Regardless of which calculation is correct, the request does not exceed the 25% ceiling.

**II.      Reasonableness Determination**

    **A.      Character of the Representation**

Substandard performance by a legal representative may warrant a reduction in a § 406(b) fee award. *Gisbrecht*, 535 US at 808; *Crawford*, 586 F3d at 1151. As an example of substandard representation, *Gisbrecht* cites *Lewis v. Sec'y of Health and Human Servs.*, 707 F2d 246 (6th Cir 1983). *Lewis* considered the counsel's poor preparation for hearings, failures to meet briefing deadlines, submissions of court documents void of legal citations, and misconduct in overbilling the claimant to amount to substandard representation. *Lewis*, 707 F2d at 248-50.

The record does not suggest that the performance by Clester's attorneys was substandard. They prepared an Opening Brief, reviewed the Commissioner's response, and prepared a Reply Brief with arguments supported by accurate and relevant citations to the administrative record and legal authority. Thus, no reduction is warranted due to the character of the representation.

    **B.      Results Achieved**

As a result of the efforts of her attorneys, Clester obtained the best possible result, namely a reversal and a remand for an award of benefits. However, an award of benefits should not be viewed in isolation or always presumed to require a fee award of 25% of a claimant's retroactive benefits award.

> If obtaining benefits always supported awarding fees for the full twenty-five percent, it would make irrelevant the other *Gisbrecht* factors and render perfunctory the trial courts' assigned task of "making reasonableness determinations in a wide variety of contexts[.]"

5 - FINDINGS AND RECOMMENDATION

*Dunnigan v. Astrue,* No. 07-CV-1645-AC, 2009 WL 6067058, *12 (D Or Dec. 23, 2009), quoting *Gisbrecht*, 535 US at 808.

    **C.**    **Dilatoriness**

A § 406(b) fee award may be reduced for delays in the proceedings attributable to the claimant's attorneys. *See Gisbrecht*, 535 US at 808; *Crawford*, 586 F3d at 1151. This reduction is appropriate "so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court." *Gisbrecht*, 535 US at 808 (citation omitted).

Clester's attorney sought only two unopposed requests for extensions of time of 30 days each to file each brief, for a total of 60 days. These extensions of time are quite reasonable and do not suggest any intent to unnecessarily delay the proceedings in order to maximize the attorney's fee award. Thus, no deduction for delay is warranted.

    **D.**    **Proportionality of Benefits Awarded to Time Spent**

A § 406(b) award may be reduced if the benefits awarded to the claimant "are not in proportion to the time spent on the case" by the claimant's attorney. *Crawford*, 586 F3d at 1151, citing *Gisbrecht*, 535 US at 808. In that regard, the court may consider the records of time incurred by the attorney and a statement of the attorney's normal hourly fee in non-contingent matters.

According to the time records submitted in support of the request for EAJA fees (docket #28-1), Clester's two attorneys incurred a total of 32.05 hours on this case (10.05 hours by Tim Wilborn and 22.00 hours by Betsy Stephens) to file two briefs. In *Harden v. Comm'r*, 497 F Supp2d 1214, 1215 (D Or 2007), Judge Mosman has observed that "[t]here is some consensus among the district courts that 20-40 hours is a reasonable amount of time to spend on a Social

6 - FINDINGS AND RECOMMENDATION

Security case that does not present particular difficulty" (citing cases).  He concluded that absent unusual circumstances or complexity, "this range provides an accurate framework for measuring whether the amount of time counsel spent is reasonable." *Id* at 1216.  *See also Gill v. Comm'r*, No.07-CV-812-HU (D Or Dec.10, 2008).  This case did not present issues that were either unusual or complex and the number of total hours spent on this case falls within a reasonable range.

The requested fees of $18,682.25 results in an effective hourly rate for Clester's attorneys of $582.91.  Clester's attorneys have no set hourly rate for representing disability claimants and have not submitted any evidence as to their normal hourly rate, if any, for non-contingent matters.  However, based on the Oregon State Bar 2007 Economic Survey, for all attorneys in Portland in private practice in the "other" category, the average hourly rate is $242.00 and the median hourly rate is $222.00, and for all Portland attorneys, the average hourly rate is $244.00 and the median hourly rate is $230.00.  Under a traditional lodestar approach, an effective hourly rate of $582.91 is nearly two and a half times that range, even considering any cost-of-living increases.

However, the goal under § 406(b) is not to compensate attorneys strictly for time expended as under lodestar approach, but to compensate them commensurately with the results achieved.  As Magistrate Judge Papak recently posited as a way to assess proportionality, "a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result." *Kovacevic v. Comm'r Soc. Sec. Admin.*, No. 05-CV-512-PK, 2010 WL 1406450, at *6 (D Or March 2, 2010).  But as he also acknowledges, this approach leaves open the questions of how to determine pre-litigation risk and how to avoid

7 - FINDINGS AND RECOMMENDATION

overcompensating that risk in order to avoid a windfall. To a claim that was significantly less risky than the average claim, Magistrate Judge Papak applied a risk factor "potentially as high as 40%." *Id* at *7. Using $222.00 as the benchmark hourly rate, a 40% risk of winning results in a 2.5 multiplier (100/40) for an effective hourly of $555.00, which is only somewhat lower than the requested effective hourly rate.

Clester's attorneys argue for an upward adjustment of this benchmark rate, based on the risks of representing claimants in Social Security cases. They assert that Social Security lawyers have only a 33.52% chance of winning benefits for the claimant, so that an upward adjustment of 2.98 (100/33.52) is warranted.[2] Applying this multiplier to the median hourly rate of $222.00 in the 2007 OSB Economic Survey results in $661.56 per hour. However, the analysis by Clester's attorneys fail to comply with directive by *Crawford* that the risk to be considered is that of the "specific case at issue" and not the lawyer's "overall success rate." Consideration of the success rate of social security appeals in general is inappropriate, and Clester's attorneys have not presented any evidence as to the pre-litigation estimate of the risk of an unfavorable outcome in this specific case.

As an alternative justification for this high effective hourly rate, Clester's attorneys cite awards of much higher effective hourly rates in other cases in this court. However, in all of those cases but one (*Carver v. Astrue*, No. 08-CV-6099-MO), the court simply signed the proposed order from plaintiff's counsel awarding 25% of the past due benefits without analyzing the factors required by *Crawford*. In fact, most of those cases were decided prior to *Crawford*. *See*

---

[2] This calculation is based on fiscal year 2007 data from the Office of Disability Programs for disability determinations allowed, dismissed, remanded and denied at various levels of review. 30 NOSSCR Social Security Forum, No. 4, p. 11 (April 2008). Even if this data was current, this court questions the conclusion drawn by Clester's attorneys from it.

*Harris v. Comm'r of Soc. Sec. Admin.*, No. 06-CV-1256-MA (July 15, 2009) ($768.76/hour); *Smith v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-974-MA (June 19, 2009) ($715.53/hour); *Wright v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-47-ST (Oct. 7, 2008) ($800.26/hour); *Scott v. Comm'r of Soc. Sec. Admin.*, No. 04-CV-1671-JE (May 27, 2008) ($768.76/hour). Clester's attorneys also neglect to mention a number of other more recent cases in which, after addressing the *Crawford* factors, this court awarded significantly lower effective hourly rates to them. *See Pennington v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-1816-ST ($418.91/hour); *Carlson v. Comm'r of Soc. Sec. Admin.*, No. 08-CV-1202-ST ($475.71/hour); *Oerding v. Comm'r of Soc. Sec. Admin.*, No. 08-CV-633-PK (request of $414.93/hour reduced to $215.76/hour); *Clark v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-702-AC ($411.04). The problem with comparing effective hourly rates in different cases is that the higher the benefits awarded and the fewer the hours incurred, the higher the effective hourly rate. In other words, the effective hourly rate is directly related to the amount of past due benefits awarded which bears no relationship to the amount of work necessary or reasonable to obtain that result. Therefore, this court rejects this sort of comparative approach.

Given the factors applicable to determining whether a reduction from the 25% contingent fee agreement is appropriate, this court concludes that an award of attorney fees equal to 25% of the retroactive benefits award is reasonable in this case.

///

///

///

///

9 - FINDINGS AND RECOMMENDATION

**RECOMMENDATION**

Plaintiff's Motion for Approval of Attorney Fees Pursuant to 42 USC § 406(b) (docket #27) should be GRANTED in the sum of $18,682.25 from which the EAJA fee of $5,580.00 should be subtracted.[3]

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 24, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 7th of January, 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

---

[3] *Jackson v. Comm'r of Soc. Sec'y*, 601 F3d 1268, 1272 (11th Cir 2010) (obligation to issue the required refund is the attorney's; the EAJA Savings Provision does not require courts to take action with respect to the refund).

10 - FINDINGS AND RECOMMENDATION